**VARSITY CARPET SERVICES, INC., Textile Coating Ltd., and Chemtech Finishers, Inc., Appellants,**

v.

**Thomas D. RICHARDSON, Trustee in Bankruptcy for Colortex Industries, Inc., Appellee.**

**Civ. A. No. 4:92–cv–175–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Oct. 23, 1992.

John P. Neal, III, Dalton, Ga., for appellants.

Thomas Dow Richardson, Brinson Askew Berry Seigler Richardson & Davis, Rome, Ga., for appellee.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Appellants' appeal of the Order of the Bankruptcy Court of the Northern District of Georgia, Rome Division on May 19, 1992, and Appellants' Motion for Oral Argument.

Jurisdiction is proper pursuant to 11 U.S.C. § 158(a).

Appellants make two claims in their appeal: (1) that the Bankruptcy Court erred in ruling that interest accrued on indebtedness incurred by the Debtor while the Debtor operated under Chapter 11 is not entitled to administrative expense priority under 11 U.S.C. §§ 503(b) and 507(a), and (2) that the Bankruptcy Court erred in ruling that Appellants were not entitled to immediate payment of their Chapter 11 administrative expense claims.

## I. STATEMENT OF FACTS

This case stems from the filing of a Chapter 11 Petition on October 24, 1989 by Colortex Industries, Inc. ("Debtor"), a carpet manufacturer in Chatsworth, Georgia. After the Debtor filed its Chapter 11 Petition, the Debtor requested that Varsity Carpet Services, Inc., Textile Coating, Ltd., and Chem–Tech Finishers, Inc. ("Appellants") perform finishing services on a credit basis while Debtor operated under Chapter 11. Between October 26, 1989 and February 1, 1990, Appellants extended trade credit to the Debtor for post-petition finishing services.

On April 17, 1990, the Bankruptcy Court approved the conversion of the case from Chapter 11 to Chapter 7. On March 2, 1992 each of the Appellants filed a Motion requesting immediate payment of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A). Appellants sought first administrative expense priority on the trade credit they extended to the Debtor during the time the Debtor operated under Chapter 11, and on the interest accrued on that trade credit. The Trustee in Bankruptcy for Colortex Industries, Inc. objected to the claim.

The Bankruptcy Court held a hearing on Appellants' claims on April 14, 1992. The parties stipulated that Varsity Carpet Services, Inc., Textile Coating, Ltd., and Chem–Tech Finishers, Inc. held valid Chapter 11 Administrative Claims in the respective amounts of $29,214.57, $11,583.55 and $3,782.82. The parties also stipulated that the estate, at the time of the hearing, had $723,738.00 on deposit. Appellants argued that their claims should be paid immediately because the estate was solvent. Appellants stated that the Trustee's Final Report showed that at the time of the Conversion of the case to Chapter 7, the estate had unpaid debts totalling $153,742.93., but that the estate had $723,738.00 on deposit at the time of the hearing.

The Trustee argued that payment of the claims was premature because a number of outstanding Chapter 7 administrative expense claims, superpriority claims, and other Chapter 11 administrative expense claims against the estate had not been resolved.

The Bankruptcy Court, in an Order on May 19, 1992, approved the Appellants' Chapter 11 administrative expense claims for the post-petition trade credits the Appellants extended to the Debtor. However, the Bankruptcy Court denied the Appellants' Motion for payment of post-petition interest on the claims and for immediate payment of the claims. The Appellants then brought this appeal.

Appellants contend that the Bankruptcy Court erred in ruling that interest accrued on the indebtedness incurred by the Debtor, while the Debtor operated under Chapter 11, is not entitled to administrative expense priority. Appellants argue that the Bankruptcy Code provides an administrative expense priority for credit extended to a debtor in Chapter 11 to encourage creditors to extend additional credit to the debtor, in order to help the debtor successfully reorganize. Appellants argue further, that failure to accord interest on credit extended to a debtor in Chapter 11 would discourage creditors from extending credit because, in essence, it would require creditors to give the debtor an interest free loan. Moreover, Appellants cite a number of cases holding that interest on post-petition tax liability claims is accorded an administrative expense priority. Appellants argue that trade credit should be treated the same because it is also an administrative expense.

The Appellee argues that the plain language of the Code does not accord interest

on post-petition administrative expense claims an administrative expense priority. Appellee admits that some courts have accorded interest on post-petition tax liability claims an administrative expense priority. However, Appellee argues those decisions should not be extended to any other type of administrative expense claim because those decisions were based solely on the specific legislative history in regard to interest on post-petition tax liability claims.

## II. STANDARD OF REVIEW

Pursuant to 11 U.S.C. § 158, the District Court sits as an Appellate Tribunal and shall review the facts and findings of the Bankruptcy Court. *Nordberg v. Arab Banking Corp. (In re Chase Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990); Fed.R.Bankr.P. 8013. Appellants' claim that the Bankruptcy Court erred in ruling that interest accrued on indebtedness incurred by the Debtor while the Debtor operated under Chapter 11 is not entitled to administrative expense priority is reviewed *de novo. In re Allied Mechanical Services, Inc.*, 885 F.2d 837 (11th Cir.1989). Appellants' claim that the Bankruptcy Court erred in ruling that Appellants were not entitled to immediate payment of their Chapter 11 administrative expense claims is reviewed under an abuse of discretion standard. *In re Chips 'N Twigs, Inc.*, 58 B.R. 109 (Bankr.E.D.Pa.1986).

## III. DISCUSSION

Initially, the Court denies Appellants' Motion for Oral Argument. The Court finds that the briefs submitted are sufficient. The Court will now discuss Appellants' claims in turn.

A. Whether Interest Accrued on Indebtedness Incurred by the Debtor While the Debtor Operated Under Chapter 11 is Entitled to Administrative Expense Priority Under 11 U.S.C. §§ 503(b) and 507(a)

The Court finds that interest accrued on the indebtedness incurred by the Debtor while the Debtor was operating under Chapter 11 is entitled to administrative

expense priority. In interpreting the Bankruptcy Code, the Court must begin with the language of the Code itself. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The bankruptcy estate is distributed according to the priorities of section 507, which provides that the first priority is given to administrative expenses:

§ 507. Priorities

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under *section 503(b)* of this title. . . .

11 U.S.C. § 507 (emphasis added).

Section 503 defines administrative expenses:

§ 503. Allowance of administrative expenses

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, *including—*

(1)

(A) *the actual, necessary costs and expenses of preserving the estate,* including wages, salaries, or commissions *for services rendered after the commencement of the case;*

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;

* * * *

11 U.S.C. § 503.

While section 503 of the Code does not specifically accord interest on

post-petition trade credit an administrative expense priority, the language of section 503 indicates that the administrative expenses listed are meant to be illustrative and not exclusive. Section 503(b) states that "there shall be allowed administrative expenses, ... including—" and then lists a series of expenses. 11 U.S.C. § 503(b)(1)–(5). In interpreting a statute, the word "include" generally implies that the terms following it are not exhaustive. *See Puerto Rico Maritime Shipping Authority v. I.C.C.*, 645 F.2d 1102, 1112 n. 5 (D.C.Cir. 1981). In fact, in *In re Bergin Corp.*, 77 B.R. 210, 212 (Bankr.E.D.Wisc.1987), the court held that the wording of section 503(b) is only "illustrative" and not "exclusive." Furthermore, the Bankruptcy Code itself specifically provides that "including" is not a limiting term when used in the Code. 11 U.S.C. § 102(3).[1] Therefore, interest may or may not be an administrative expense.

■ Where the statute is ambiguous on its face, a court may turn to the legislative history of the statute. *See In re Allied Mechanical Services, Inc.*, 885 F.2d 837, 839 (11th Cir.1989). The Court is not aware of any relevant discussion in the legislative history of whether interest should be allowed on post-petition administrative expenses generally. However, there was discussion in the legislative history of whether interest should be allowed on post-petition tax liability claims.

The courts that have addressed the issue have split as to whether or not the legislative history means that interest on post-petition tax liability claims should be accorded administrative expense priority. The dispute as to the legislative history revolves around different versions of 503(b)(1)(B) passed by the House, the Senate, and the Conference Committee. The version of 503(b)(1)(B) passed by the Senate stated that "taxes, including interest there-

on," should be treated as administrative expenses. S. 2266, 95th Cong., 2d Sess. (1978). The version passed by the House contained no reference to interest. H.R. 8200, 95th Cong., 1st Sess., (1977). The version adopted by the Conference Committee also contained no reference to interest. 124 Cong.Rec. H11094–95 (daily ed. Sept 28, 1978) (statement of Rep. Edwards).

The courts that have held that the legislative history means that post-petition interest on post-petition tax liability should not be accorded administrative expense priority, have found that the Conference Committee's final version of section 503(b)(1), which excluded any mention of interest on post-petition tax liability, evidenced a purposeful intent to exclude interest. *See In re Mark Anthony Const., Inc.*, 78 B.R. 260 (9th Cir. BAP 1987), *rev'd*, 886 F.2d 1101 (9th Cir.1989); *In re Stack Steel and Supply Co.*, 28 B.R. 151, 156 (Bankr. W.D.Wash.1983).

However, all Circuit courts addressing the issue, including the Eleventh Circuit, have held that the legislative history supports the position that interest on post-petition tax liability claims is entitled to a first administrative expense priority under section 503(b)(1). *See In re Allied Mechanical Services, Inc.*, 885 F.2d 837, 839 (11th Cir.1989); *In re Mark Anthony Const., Inc.*, 886 F.2d 1101, 1105–08 (9th Cir.1989); *United States v. Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984).

Basically, these courts have found that the legislative history relating to the adoption of section 503(b)(1) is inconclusive. *See Allied*, 885 F.2d at 839; *Mark Anthony*, 886 F.2d at 1107. Therefore, these courts looked to the pre-Code law, and to whether Congress intended to change the pre-Code common law when it enacted section 503(b)(1). *Id.* These courts found that the pre-Code bankruptcy law, chiefly the

---

1. 11 U.S.C. § 102 states in pertinent part:
   § 102 Rules of Construction
   In this title [the Bankruptcy Code]—

   (3) "includes" and "including" are not limiting;

United States Supreme Court's opinion in *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), accorded interest on post-petition tax liability claims an administrative expense priority.[2] *See Allied*, 885 F.2d at 839. And because these courts found no indication that Congress intended to alter the priority of post-petition interest from its priority in the common law, they concluded that post-petition interest on tax liability claims is to be accorded a first administrative expense priority under section 503(b)(1). *See Allied*, 885 F.2d at 839; *Mark Anthony*, 886 F.2d at 1107.

Likewise, this Court finds that the legislative history relating to the adoption of section 503(b)(1)(A) is inconclusive because the Court is aware of no additional relevant legislative history beyond that already discussed. Therefore, this Court will also look to the pre-Code law, and to whether Congress intended to change the pre-Code common law when it enacted section 503(b)(1)(A).

The Court finds that the United States Supreme Court's opinion in *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), is equally applicable to the determination of whether interest on post-petition trade credit is to be accorded a first administrative expense priority under section 503(b)(1). *Nicholas* followed a line of cases in which the Supreme Court held that generally interest stops accruing as of the date a petition in bankruptcy is filed. In those cases the Supreme Court explained that it was unfair to creditors holding lower priority claims to allow the estate to be consumed by the continuing accumulation of interest on certain debts held by creditors with higher priority claims, solely because of the legal delay in the administration of the estate under the control of the bankruptcy court. *See Sexton v. Drey-*

*fus*, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911) and *City of New York v. Saper*, 336 U.S. 328, 330, 69 S.Ct. 554, 555, 93 L.Ed. 710 (1949).

*Nicholas* involved an administrative expense priority claim by the federal government for tax liability accrued during a debtor's reorganization under Chapter XI of the Bankruptcy Act. The Court noted the general rule that interest stops accruing as of the date a petition in bankruptcy is filed, but went on to emphasize the fundamental difference between interest on debts incurred before the filing of a petition and interest on debts incurred during the reorganization itself. The Court remarked that unlike interest incurred after a petition for bankruptcy, interest on debts incurred while the debtor is attempting to reorganize under Chapter XI does not arise because of the legal delay in the administration of the estate under the control of the bankruptcy court. *Nicholas*, 384 U.S. at 684–85, 86 S.Ct. at 1679–80. Instead, the interest is incurred while the debtor is actively trying to reorganize. Therefore, creditors with lower priority claims are not disadvantaged because of the legal delay in the administration of the estate under control of the bankruptcy court.

The Supreme Court then went on to stress the added policy reason for according interest incurred while a debtor is attempting to reorganize under Chapter XI an administrative expense priority.

> The allowance of interest on Chapter XI debts until the filing of a petition in bankruptcy promotes the availability of capital to a debtor in possession and enhances the likelihood of achieving the goal of the proceeding, the ultimate rehabilitation of the debtor. *Disallowance of interest on Chapter XI debts might seriously hinder the availability of such*

---

**2.** This Court is aware of the contrary interpretation of the pre-Code law in *In re Brooks & Woodington*, 505 F.2d 794, 799 (7th Cir.1974), and finds it unpersuasive. *Brooks* held that accountants employed by the trustee were not entitled to interest on their claim against estate for services performed on behalf of the estate. *Id.*, 505 F.2d 794. The *Brooks* court stated generally that interest does not accrue on claims after the filing of the bankruptcy petition, and therefore the court denied the accountants claim for interest on its post-petition work. *Id.*, 505 F.2d at 799. The Court finds *Brooks* unpersuasive because it completely fails to discuss the holding in *Nicholas* that interest on *post-petition* administrative expenses are to be accorded first priority status.

*funds and might in many cases foreclose the prospect of the debtor's recovery.*

*Nicholas,* 384 U.S. at 687, 86 S.Ct. at 1681 (emphasis added). The *Nicholas* Court recognized that debts incurred during the reorganization itself are administrative expenses that ought to be paid on a current basis and must bear interest if any creditor is to remain willing to do business with a debtor in reorganization.

The Eleventh Circuit echoed these same policy concerns when it held that interest on post-petition tax liability is to be accorded a first administrative expense priority under section 503(b)(1).

> [T]he treatment of administrative expenses as debts entitled to first priority status suggests *an overriding policy that a debtor's efforts to reorganize shall be financed by the debtor, not the debtor's post-petition creditors.... "to hold otherwise would be in effect to grant the debtors an interest free loan...."*

*In re Allied Mechanical Services, Inc.,* 885 F.2d 837, 839 (11th Cir.1989), (quoting *In re Gould & Eberhardt Gear Machinery Corp.,* 80 B.R. 614, 617 (D.Mass.1987)) (emphasis added).

■ The Supreme Court's reasoning in *Nicholas* and the Eleventh Circuit's reasoning in *Allied* is equally applicable to this case. These same policy concerns, while expressed in cases dealing with claims for interest on post-petition tax liability, are equally applicable to interest on post-petition trade credit. Both are first priority administrative expenses, and therefore both are subject to the same policy rationale of furthering the ability of debtors in Chapter 11 to successfully reorganize. In fact, if anything there is a greater policy reason for according interest on post-petition trade credit an administrative expense priority. Nothing effects the ability of debtors in Chapter 11 to successfully reorganize more than the infusion of further credit from other creditors. Failure to ac-

cord interest on credit extended to a debtor in Chapter 11 would, in essence, require creditors to give the debtor an interest free loan. This would discourage creditors from extending credit, and thus hinder the ability of debtors to successfully reorganize under Chapter 11, thus defeating the very purpose of Chapter 11.

Finally, in regard to the proper interpretation of section 503(b)(1), the Court finds that the absence of any mention of interest in the Conference Committee's version of section 503(b)(1) is not significant because interest is many times automatically included in the principal amount owed. *See In re Johnson,* 66 B.R. 39 (Bankr.W.D.Ark.1986). The United States Supreme Court held in *Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 906, 11 L.Ed.2d 772 (1964), that "interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt."

The Court is also aware that according a first administrative expense priority to interest on post-petition trade credit claims will decrease the amount of money available to other creditors holding lower priority claims. The Court, however, finds that the policy reasons for according a first administrative expense priority to interest on post-petition trade credit claims are stronger. The need for further infusion of credit to debtors in Chapter 11 is vital to the successful reorganization of debtors, and the granting of interest is in turn vital to encouraging and ensuring the infusion of further credit to debtors in Chapter 11. *See Nicholas,* 384 U.S. at 687, 86 S.Ct. at 1681; *Allied,* 885 F.2d at 839.

Therefore, this Court concludes that the interest on Appellants' post-petition trade credit accrued while the Debtor operated under Chapter 11 must be accorded a first administrative expense priority under section 503(b)(1)(A).[3]

---

**3.** The Court wants to make clear that Appellants are only entitled to interest while the Debtor operated under Chapter 11. Once the Bankrupt-

cy Court approved the conversion of the case to Chapter 7, the policy reasons for allowing interest discussed in *Nicholas* and *Allied* ended.

B. Whether Appellants Were Entitled to Immediate Payment of Their Chapter 11 Administrative Expense Claims When the Bankruptcy Court Approved the Claims.

■ Appellants contend that the Bankruptcy Court abused its discretion in not immediately ordering payment of all of their administrative expense claims against the estate. Appellants argue that a bankruptcy court must pay out administrative expense claims if there are sufficient unencumbered assets in the estate to pay all administrative expense claims. Appellants maintain there were sufficient unencumbered assets in the Debtor's bankruptcy estate. Appellee argues that it was never established before the Bankruptcy Court that there were sufficient unencumbered assets in the estate to pay all the administrative expense claims. Moreover, the Appellee remarks that because the Bankruptcy Court was in the best position to decide when to pay administrative expense claims, its decision should not be disturbed absent a clear abuse of discretion.

■ The Appellee is correct that the decision of when to pay administrative expense claims is committed to the sound discretion of the bankruptcy court. *In re Chips 'N Twigs, Inc.*, 58 B.R. 109 (Bankr. E.D.Pa.1986). And the Court finds that the Bankruptcy Court in this case did not abuse its discretion in refusing to immediately pay the administrative expense claims of the Appellants. The Court recognizes that at the time of the hearing, the estate might have had sufficient unencumbered assets to pay all administrative expense claims. However, nowhere in the record below is it definitively established that there were sufficient unencumbered assets in the estate to satisfy all administrative expense claims. While the Trustee did stipulate that the estate had $723,738.00 on deposit, the Trustee also stated that several outstanding Chapter 7 and 11 administrative expense claims against the estate had not been settled, which might generate additional administrative expense claims. As such, the Court finds that there was not enough evidence before the Bankruptcy Court as to the final amount of claims against the estate to find that the Bankruptcy Court abused its discretion in refusing to immediately pay the Appellants' claims.

The Court also finds that Appellants reliance on *In re Four Star Pizza, Inc.*, 135 B.R. 498 (Bankr.W.D.Pa.1992), *In re Washington Bancorporation*, 126 B.R. 130 (Bankr.D.D.C.1991), and *In re Far West Corporation of Shasta County*, 120 B.R. 551 (Bankr.E.D.Cal.1990) inapposite. All of these cases involved administrative rent claims asserted in Chapter 11 cases pursuant to 11 U.S.C. § 365(d)(3), which specifically requires timely payment of administrative expense claims arising under this section. That requirement of timely payment is not required for administrative expense claims generally.

Moreover, in all of these case the courts determined that the estates had sufficient unencumbered assets to pay all administrative expense claims. However, in this case, the Bankruptcy Court made no determination as to whether the estate had sufficient unencumbered assets to pay all administrative expense claims, and Appellants offered no definitive proof of the final amount of administrative expense claims.

IV. CONCLUSION

Accordingly, based on the above, the Court DENIES Appellants' Motion for Oral Argument, and AFFIRMS IN PART AND REVERSES IN PART the Bankruptcy Court's Order of May 19, 1992. The Court REVERSES the Bankruptcy Court's ruling that interest accrued on indebtedness incurred by the Debtor while the Debtor operated under Chapter 11 is not entitled to administrative expense priority under 11 U.S.C. §§ 503(b) and 507(a). The Court AFFIRMS the Bankruptcy Court ruling that Appellants were not entitled to immediate payment of their Chapter 11 administrative expense claims.

IT IS SO ORDERED.